**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| BRET A. BROADDUS, | ) | | FILED: AUGUST 6, 2008 |
| | ) | | 08CV4420 |
| Plaintiff, | ) | | JUDGE ST. EVE |
| | ) | No. | MAGISTRATE JUDGE COLE |
| v. | ) | | |
| | ) | | |
| KEVIN SHIELDS, | ) | | JFB |
| | ) | | |
| Defendant. | ) | | |

<u>**DEFENDANT KEVIN SHIELDS' NOTICE OF REMOVAL**</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and all other applicable statutes, Defendant

Kevin Shields ("Shields"), hereby removes the above-captioned lawsuit from the Circuit Court of

Cook County, Illinois, County Department/Law Division, Case No. 08 L 005933, to the United

States District Court for the Northern District of Illinois, Eastern Division.  In support of this

Notice of Removal, Shields states:

**I.    <u>NATURE OF THE CASE</u>**

1.      On or about May 30, 2008, Bret A. Broaddus ("Broaddus") filed a Complaint in

the Circuit Court of Cook County, Illinois, County Department/Law Division against Shields.

Shields was served with the Complaint and Summons on July 7, 2008.  A copy of the Complaint

and  Summons is attached as Exhibit A hereto.

2.      The Complaint alleges that on or about November 2, 2000, Broaddus was

assigned a 10% "membership interest" in Will Partners, and Will Partners further agreed to

provide Broaddus with compensation for services Broaddus provided.  Complaint ¶ 3.  Broaddus

claims that he was subsequently involved in a motor vehicle accident that affected his "cognitive

abilities."  Complaint ¶ 5.  The Complaint alleges that after the motor vehicle accident, Shields

misrepresented to Broaddus the rents and accounts receivable for certain property and persuaded

Broaddus to assign his interest in Will Partners to Shields.  Complaint.  ¶¶ 6-7.

## II.  <u>THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION</u>

3.      This action is removable under 28 U.S.C. § 1441(a).  Under Section 1441(a), "any

civil action brought in a State court of which the district courts of the United States have original

jurisdiction, may be removed by the defendant or the defendants, to the district court of the

United States for the district and division embracing the place where such action is pending."  28

U.S.C. § 1441(a).  As outlined below, this Court has subject matter jurisdiction over Broaddus'

claim under 28 U.S.C. § 1332.  These claims are thus removable under Section 1441(a).

### A.      **There Is Complete Diversity of Citizenship Between the Parties.**

4.      Broaddus is, on information and belief, a citizen of Illinois.

5.      Shields is a citizen of the United States and of the State of California.  *See* Exhibit

B, ¶ 3 (Affidavit of Kevin Shields).  He resides at 3421 Manhattan Avenue, Manhattan Beach,

California 90266 .  His driver's license is issued by the State of California, and he is registered to

vote in the State of California.

6.      Thus, this lawsuit is between citizens of different states, and there is complete

diversity of citizenship between the parties.

### B.      **The Amount in Controversy Requirement is Satisfied.**

7.      The Complaint explicitly seeks damages in excess of $75,000.  *See* Complaint,

Prayer for Relief ("WHEREFORE, Plaintiff Bret Broaddus respectfully requests this Court enter

judgment in his favor and against Kevin Shields; award Plaintiff compensatory  and punitive

damages, attorney's fees, prejudgment interest, and costs of suit in an amount in excess of $75,000.00; and award any further relief to which this Court finds Broaddus entitled").

8.      This case satisfies the amount in controversy requirement.  The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332, and the action may be removed to this Court pursuant to 28 U.S.C. § 1441.

## III.    SHIELDS HAS COMPLIED WITH ALL PROCEDURAL REQUIREMENTS FOR REMOVAL

9.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty days after service of the Complaint on Shields on July 7, 2008.

10.     Also, venue of the removed action is proper in this Court because it is the district and division embracing the place where the state court action is pending.  28 U.S.C. § 1446(a). The United States District Court for the Northern District of Illinois, Eastern Division, is the judicial district and division that includes the Circuit Court of Cook County, Illinois, County Department/Law Division, where the suit was originally filed.  28 U.S.C. § 93(a)(1).

11.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders that have been served upon Shields[1] have been provided to the District Clerk, attached as Exhibit A.

12.     Upon the filing of this Notice of Removal, Shields shall promptly give notice thereof to Broaddus' counsel.  Shields shall also file a copy of this Notice with the Clerk of the Circuit Court of Cook County, Illinois, County Department/Law Division, pursuant to 28 U.S.C. § 1446(d).

---

[1]  At the time of filing this Notice of Removal, Shields has been served only with the Complaint and Summons attached as Exhibit A.  Shields has not been served with any court orders entered in the state court litigation.

WHEREFORE, Defendant Kevin Shields, pursuant to 28 U.S.C. §§ 1332, 1441,

1446 and all other applicable statutes and in conformance with the requirements set forth in 28

U.S.C. § 1446, hereby removes this cause from the Circuit Court of Cook County, Illinois,

County Department/Law Division, to the United States District Court for the Northern District of

Illinois, Eastern Division.

Dated:  August 6, 2008                                    Respectfully submitted,


                                                          _____s/ Thomas I. Matyas_____
                                                          One of the Attorneys for Kevin Shields

Thomas I. Matyas (1796984)
Alison C. Conlon (6272083)
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, 30th Floor
Chicago, Illinois 60606
312-201-2000 (telephone)
312-201-2555 (fax)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused a copy of the foregoing **Defendant Kevin Shields' Notice Of Removal** to be served on the counsel below via first class mail, proper postage prepaid, by placing same in the U.S. mail at 225 W. Wacker Drive, Chicago, IL 60606, before the hour of 5:00 p.m. on this 6th day of August, 2008:

Ariel Weissberg
Rakesh Khanna
Weissberg and Associates, Ltd.
401 S. LaSalle Street, Suite 403
Chicago, IL  60605


s/ Thomas I. Matyas
Attorney for Kevin Shields


Thomas I. Matyas (1796984)
Alison C. Conlon (6272083)
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois  60606-1229
Phone:  (312) 201-2000
Fax:      (312) 201-2555

```
FILED: AUGUST 6, 2008
08CV4420
JUDGE ST. EVE
MAGISTRATE JUDGE COLE

JFB
```

# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

BRET A. BROADDUS,                )
                                 )    CASE NO.
            Plaintiff,           )
                                 )
      v.                         )
                                 )
KEVIN SHIELDS                    )
                                 )    2008L005953
            Defendant.           )    CALENDAR/ROOM P
                                      TIME 00:00
                                      Other Com Liriaer......

## COMPLAINT

NOW COMES Plaintiff, Bret A. Broaddus ("Broaddus"), by his attorneys, Weissberg and Associates, and complains against Defendant, Kevin Shields, and in support of his Complaint, states:

1.    On or about April 13, 1999, Will Partners, LLC ("Will Partners") was incorporated in Illinois by Defendant Kevin Shields ("Shields") and Don Pescara, among others.

2.    On information and belief, Will Partners was an entity which purchased real property for leasing and development.

3.    On or about November 2, 2000, Broaddus was assigned a 10% membership interest in Will Partners, and Will Partners further agreed to provide Broaddus with compensation for services Broaddus provided to Will Partners in an amount equal to 44.444% of 90% of "the Net Cash Flow, Net Proceeds, or in kind distributions received by Shields and Pescara" in connection to their proportionate membership interests.  See November 2, 2000 Agreement attached hereto and marked as Exhibit A.  The November 2, 2000 Agreement acknowledges that Broaddus was to receive a 50% share of the distributions of Will Partners.

4.     The services Broaddus provided to Will Partners was in connection to the acquisition and construction of several build-to-suit buildings purchased by Will Partners. Broaddus negotiated the acquisition and/or construction of these build-to-suit properties and procured commercial tenants for the properties on behalf of Will Partners.

5.     On or about November 1, 2001, Broaddus was involved in a motor vehicle accident in which he suffered massive bodily injury and a traumatic brain injury. Thereafter, Broaddus lost significant mental faculty and has since struggled with regaining his cognitive abilities.

6.     Subsequent to Broaddus' motor vehicle accident of November 2001, Shields made certain misrepresentations about partnership assets and liabilities to Broaddus; namely, that rents were not being received for several of the build-to-suit properties and otherwise underrepresented accounts receivable to Broaddus.

7.     By making such statements in connection to the accounts receivable of Will Partners, Shields persuaded Broaddus to assign Broaddus' shares in Will Partners to Shields. On or about June 1, 2003, Broaddus assigned all right, title, and interest in Will Partners to Shields in exchange for compensation far below the actual value of compensation (3 cents for every dollar owed) due and owing to Broaddus pursuant to the November 2, 2000 Agreement. See June 1, 2003 Assignments, attached hereto and marked as Exhibits B and C respectively.

## COUNT I
### (Breach of Fiduciary Duty)

8.    Plaintiff restates and realleges paragraphs 1 through 7 as though fully restated as paragraph 8 of this Count I.

9.    A special relationship existed between Shields and Broaddus because they were fellow members of Will Partners.

10.    Shields, who maintained, controlled and managed the assets and liabilities of Will Partners owed Broaddus a fiduciary duty in the management of Will Partners and owed Broaddus a duty to accurately and truthfully account to the members about the business and financial affairs of Will Partners.

11.    Shields breached his duty to Broaddus by making exerting undue influence on Broaddus and taking advantage of Broaddus while he was in a weakened condition and by making misrepresentations to Broaddus with respect to the assets and liabilities of Will Partners in order to induce Broaddus to sell, at a highly reduced rate, Broaddus' interest in Will Partners.

12.    As a result of Shields' misrepresentations made to Broaddus, Broaddus was convinced by Shields to sell his interests in Will Partners for an amount worth far less than the actual amount due to Broaddus for his efforts expended on behalf of Will Partners.

13.    As a direct and proximate result of Shields' breaches of fiduciary duties, Plaintiff has suffered damages in the amount to be proven at trial, but in excess of $75,000.00, including all compensatory damages and costs.

WHEREFORE, Plaintiff Bret Broaddus respectfully requests this Court enter judgment in his favor and against Kevin Shields; award Plaintiff compensatory and punitive damages, attorney's fees, prejudgment interest, and costs of suit in an amount in excess of $75,000.00; and award any further relief to which this Court finds Broaddus entitled.

**BRET A. BROADDUS**, Plaintiff

By: _____
One of his attorneys

Ariel Weissberg, Esq.
Rakesh Khanna, Esq.
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL 60604
(312) 663-0004
Attorney No. 91781

11-05-02   11:19am  ,From-GP.FFM CAPITAL                3105467550            T-214  P 01/05  F-933

# AGREEMENT

This Agreement is made as of the 2ᴺᴰ day of *November*, 2000 between Kevin A. Shields ("Shields"), Don Pescara ("Pescara") and Bret Broaddus ("Broaddus").

## RECITALS

A.      Reference is made to the First Amended and Restated Operating Agreement of WILL PARTNERS, LLC, a Delaware limited liability company (the "Company"), dated as of April 26, 2000 (the "Operating Agreement"), between Shields, Pescara, World Kitchen, Inc., a Delaware corporation ("WKI"), and Will Acquisitions, Inc., a Delaware corporation ("Managing Member"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Operating Agreement.

B.      Shields currently owns a 74% Membership Interest in the Company. Simultaneously with the execution and delivery of this Agreement, Shields is assigning to Broaddus a 7.50% Percentage Interest in the Company. Subsequent to such assignment Shields will own a 66.5% Percentage Interest ("Shields Interest"). Pescara currently owns a 25% Percentage Interest in the Company. Simultaneously with the execution and delivery of the letter, Pescara is assigning to Broaddus a 2.5% Percentage Interest in the Company. Subsequent to such assignment Pescara will own a 22.50% Membership Interest (the "Pescara Interest"). Subsequent to the assignments by Shields and Pescara, Broaddus will own a ten percent (10%) Membership Interest in the Company.

C.      Shields and Pescara have agreed to compensate Broaddus for certain future services by paying to Broaddus 44.444% of ninety percent (90%) of the Net Cash Flow, Net Proceeds, or in kind distributions, if any, actually received by Shields and Pescara from the Shields Interest and the Pescara Interest, respectively ("Distributions"). Such 44.444% payment of the Distributions is hereinafter referred to as the "Additional Payments".

D.      Broaddus hereby acknowledges that by virtue of the foregoing assignments from Shields and Pescara, and the Additional Payments, he is effectively receiving 50.00% of 100% of the Distributions to all Members of the Company.

NOW THEREFORE, for good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      The Recitals to this Agreement are hereby incorporated by reference as though fully set forth herein.

2.      Notwithstanding anything contained in the Operating Agreement to the contrary:

(i)      within five (5) business days after receipt thereof, after receipt of any Distributions, Shields and Pescara shall pay to Broaddus an amount equal to 44.444% of the Distributions received by them pursuant to the Shields Interest and the Pescara Interest, respectively;

Doc No · 524542v7

**EXHIBIT**

**A**

(ii)    Broaddus agrees that for tax purposes, he shall receive all General Tax Allocations, Special Tax Allocations and all other tax effects arising from the payments referred to in clause (i) above as if Broaddus owned a 50% Membership Interest in the Company, notwithstanding that Broaddus is entitled only to an interest in the Distributions actually received by Shields and Pescara;

(iii)    if the parties are unable to effect such tax treatment through direct payments to Broaddus, the parties shall form an entity into which such Distributions shall be placed to effectively allocate the tax effects of such payments to accomplish the objective set forth in clause (ii) above, without requiring Shields or Pescara to pay tax on, or suffer negative tax consequences as a result of, the Additional Payments;

(iv)    Shields shall be the Tax Matters Member or Partner of such entity for purposes of effecting the stated objectives set forth in clause (iii) above and the costs of such entity formation and operation (e.g., attorneys' and accountants' fees, formation, maintenance, franchise fees and the like) shall be divided between the parties on the basis of the Distributions retained by them, after giving effect to this Agreement and the Additional Payments;

(v)    if any party fails to comply with the provisions of clause (iii) and (iv) above, such non-complying party, at its sole cost and expense, shall indemnify, defend and hold harmless the other parties hereto with respect to any adverse tax treatment, consequences or effects arising from such failure. Costs and expense incurred by the complying parties hereto may be offset from Distributions payable to the non-complying party.

3.    Broaddus acknowledges and agrees that (a) the Shields Assignment and the Pescara Assignment are contingent upon the consent of WKI and Wells Fargo Bank National Association ("Wells"), holder of the current Loan on the Property; (b) if the consent of the foregoing parties is not received, this Agreement and the assignments described in clause (a) above shall be void, *ab initio*, and of no force and effect provided, however, that Shields and Pescara shall act diligently in obtaining the consents of WKI and Wells; and (c) costs or expenses in obtaining such consents including, without limitation, attorneys' fees of the Company and Wells, shall be deemed an expense of the Company.

4.    Broaddus further acknowledges and agrees that the liability for any one or more of the Additional Payments is not a joint and several obligation of Shields or Pescara; and that this Agreement is not a guarantee that any specific amount or return will be distributed to Shields or Pescara and paid to Broaddus as Additional Payments.

5.    In the event of either (a) a financing of the Property (b) a sale of the Property; or (c) the leasing of the Property, Shields, as managing member of the Manager of the Company, shall cause the Manager to deliver sixty (60) days prior notice to Broaddus.

6.    Notwithstanding anything contained in the Operating Agreement to the contrary, in the event of an exercise of the Buy/Sell right pursuant to the terms of Section 11 of the Operating Agreement by the parties hereto, the Buy Sell Price of the respective interests of the Members shall be adjusted as hereinafter set forth:

Doc No. 524542v7

11-05-02  11:46am  From-GRIFFIN CAPITAL                3105467550           1-214   P.03/05   F-955

(a) If Broaddus elects to purchase the Shields Interest or the Pescara Interest, the Buy Sell Price for the interest in question shall be adjusted by multiplying the same by 55.556%.

(b) If Shields or Pescara elect to purchase the Broaddus Membership Interest, the Buy Sell Price shall be adjusted by multiplying the same by 500%.

(c) the parties acknowledge that the aforesaid percentages (i) have been calculated based on the percentage of each parties membership interests as of the date hereof, and that such percentages shall be equitably adjusted in the event the percentage amount of their respective interests changes; and (ii) the interests of the Managing Member and Kevin Shields have been treated as one interest for the purpose of this paragraph.

7.      Should it be necessary for any party to this Agreement to initiate legal proceedings to adjudicate any issues arising hereunder or under any document executed pursuant hereto, the prevailing party in such legal proceedings shall be entitled to reimbursement of such party's attorneys' fees, costs, expenses and disbursements (including the fees and expenses of expert witnesses) reasonably incurred or made in bringing such proceeding. This Agreement constitutes the entire agreement between the parties hereto pertaining to Broaddus' interest in the Company and all prior and contemporaneous agreements, representations, negotiations and understandings of the parties hereto, oral or written, are hereby superseded with respect to the subject matter hereof. No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge or change is or may be sought.

8.      If it is necessary to interpret or enforce any of the terms of this Agreement, it is the intent of all parties that the laws of the State of Delaware shall apply, without giving effect to principles or provisions thereof related to conflicts of laws or choice of laws.

9.      No waiver by either party of a breach of any of the terms, covenants or conditions of this Agreement by the other party shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition herein contained. No waiver of any default by either party hereunder shall be implied from any omission by the other party to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect a default other than as specified in such waiver. The consent or approval by either party to any act by the other party requiring consent or approval, shall not be deemed to waive or render unnecessary consent or approval to or of any subsequent similar acts.

10.      This agreement shall inure to the benefit of and be binding upon, the successors and assigns of each party hereto.

11.      All notices, demands, requests, consents, approvals and other communications hereunder shall be in writing and personally delivered or couriered (by Federal Express or another reputable, national overnight delivery service), addressed to the respective parties, as follows: if to Broaddus: 112 Clubhouse Drive, Barrington, IL 60010; with a copy to: Alan S. Levin, Esq., Alan S. Levin & Associates, Ltd., 134 North LaSalle Street, Suite 720, Chicago, Illinois 60602; if to Shields, c/o Griffin Capital, 3421 Manhattan Avenue, Manhattan Beach, California, 90266; or if to Pescara, c/o Griffin Capital, 1214 N. LaSalle St., Chicago, IL 60610,

Doc No: 324542v7

11-05-02  11:41am  From-GRIFFIN CAPITAL          3105467550          T-214  P.04/05  F-933

and in the case of notices to Shields or Pescara with a copy to: Mary Higgins, Esq., Wildman, Harrold, Allen & Dixon, 225 W. Wacker Drive, Chicago, IL 60606-1229, or to such other address as either may hereafter designate, and shall be effective upon receipt as evidenced by a receipt signed by a person at such address authorized to accept delivery, or upon refusal to accept delivery.

[SIGNATURE PAGE FOLLOWS]

Doc. No.: 524542v7

11-03-02  11:42am    From-GRIFFIN CAPITAL                      3105467550              T-214   P.05/05   F-933

.. .IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth below.

Dated: As of _November__2__, 2000.

Kevin A. Shields

Don O. Pescara

Bret A. Broaddus

Doc. No. 534542v7

## ASSIGNMENT

**THIS ASSIGNMENT** is executed as of the 1st day of June, 2003 by Bret A. Broaddus, an Illinois resident ("Assignor") in favor of Kevin A. Shields ("Assignee").

**THIS ASSIGNMENT** is made with reference to the following facts:

A.    Assignor is the holder of that certain agreement executed by and between Kevin A. Shields ("Shields"), Don G. Pescara ("Pescara") and Bret A. Broaddus ("Broaddus") and dated November 2nd, 2000 wherein Shields and Pescara assigned to Broaddus a portion of their membership interests in Will Partners, LLC, a Delaware limited liability company (the "Company") such that, following the assignment, Broaddus, among other things, is entitled to effectively receive 50.0% of 100.0% of the distributions to all members of the Company (the "Membership Participation").

B.    For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Assignor, Assignor desires to execute and deliver this Assignment for the purpose of assigning the Membership Participation to Assignee.

**NOW, THEREFORE**, in consideration of the foregoing and intending to be legally bound hereby, Assignor agrees as follows:

**TO HAVE AND TO HOLD,** Assignor does hereby assign, transfer, convey and deliver to Assignee, its successors and assigns, all rights, interests, and titles of Assignor in and to the Membership Participation for Assignee's use and benefit forever, with full power and authority vested in Assignee with respect to the Agreement, to demand, receive and to sue for, either in the name of Assignee or in the name of Assignor, and enforce the rights transferred hereunder, hereby ratifying and confirming all that Assignee may do by virtue hereof.

**Purchase Price; Receipt of Payment.**    The purchase price for the Membership Participation is $500,000.00 (the "Purchase Price"). Assignor acknowledges that Assignor has received full payment by Assignee of the Purchase Price and that such payment constitutes the full consideration for the transfer of the Membership Participation, which transfer is fully consummated by the execution and delivery of this Assignment.

**Representations and Warranties.**

A.  Assignor represents and warrants that (a) he is the sole owner of the Membership Participation; (b) the Membership Participation is held by Assignor free and clear of all liens, charges, claims and encumbrances; (c) Assignor possesses the power and authority in his own right to sell the Membership Participation; (d) the execution, delivery and performance of this Assignment by Assignor and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to

Page 1

**EXHIBIT**

B

which Assignor is a party or by which Assignor or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Participation or the violation of which is likely to have a material and adverse effect upon the Membership Participation; (e) Assignor has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Participation and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (f) Assignor has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Participation; (g) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Participation; and (h) Assignor has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

B. Assignee represents and warrants that (a) Assignee possesses the power and authority in his own right to purchase the Membership Participation; (b) the execution, delivery and performance of this Assignment by Assignee and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignee is a party or by which Assignee or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Participation or the violation of which is likely to have a material and adverse effect upon the Membership Participation; (c) Assignee has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Participation and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (d) Assignee has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Participation; (e) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Participation; and (f) Assignee has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

C. These representations and warranties shall survive the date of this Assignment.

**No Rights in Third Parties.** Nothing expressed or implied in this Assignment is intended to confer upon any person, other than Assignor and Assignee, and their respective successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Assignment.

**Successors and Assigns.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and legal representatives.

**Release.**

A.  On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignor hereby remises, releases and forever discharges Assignee, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent (including, without limitation, those relating to Assignor's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein), from the beginning of time to the date of this Assignment.

B.  On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignee hereby remises, releases and forever discharges Assignor, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of this Assignment.

**Indemnification.** Assignor agrees to indemnify, defend and hold harmless the Assignee and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignor contained herein. Assignee agrees to indemnify, defend and hold harmless the Assignor and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignee contained herein. These indemnifications shall survive the date of this Assignment.

**Governing Law.** This Assignment shall be governed by, construed and enforced according to the laws of Delaware.

**Headings.** The section headings contained herein are for convenience only and are not intended to define or limit the contents of such sections.

**IN WITNESS WHEREOF**, Assignor has caused this Assignment to be executed on the date first above written.

Bret A. Broaddus

## ASSIGNMENT

**THIS ASSIGNMENT** is executed as of the 1st day of June, 2003 by Bret A. Broaddus, an Illinois resident ("Assignor") in favor of Kevin A. Shields ("Assignee").

**THIS ASSIGNMENT** is made with reference to the following facts:

A.    Assignor is the holder of a 10.00% membership interest (the "Membership Interest") in Will Partners, LLC, a Delaware limited liability company (the "Company").

B.    For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Assignor, Assignor desires to execute and deliver this Assignment for the purpose of assigning the Membership Interest to Assignee.

**NOW, THEREFORE,** in consideration of the foregoing and intending to be legally bound hereby, Assignor agrees as follows:

**TO HAVE AND TO HOLD,** Assignor does hereby assign, transfer, convey and deliver to Assignee, its successors and assigns, all rights, interests, and titles of Assignor in and to the Membership Interest for Assignee's use and benefit forever, with full power and authority vested in Assignee with respect to the Membership Interest, to demand, receive and to sue for, either in the name of Assignee or in the name of Assignor, and enforce the rights transferred hereunder, hereby ratifying and confirming all that Assignee may do by virtue hereof.

**Purchase Price; Receipt of Payment.** The purchase price for the Membership Interest is $100,000.00 (the "Purchase Price"). Assignor acknowledges that Assignor has received full payment by Assignee of the Purchase Price and that such payment constitutes the full consideration for the transfer of the Membership Interest, which transfer is fully consummated by the execution and delivery of this Assignment.

**Representations and Warranties.**

A.  Assignor represents and warrants that (a) he is the sole owner of the Membership Interest; (b) the Membership Interest is held by Assignor free and clear of all liens, charges, claims and encumbrances; (c) Assignor possesses the power and authority in his own right to sell the Membership Interest; (d) the execution, delivery and performance of this Assignment by Assignor and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignor is a party or by which Assignor or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Interest or the violation of which is likely to have a material and adverse effect upon the Membership Interest; (e) Assignor has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Interest and has had full access to such other



information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (f) Assignor has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Interest; (g) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Interest; and (h) Assignor has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

B.  Assignee represents and warrants that (a) Assignee possesses the power and authority in his own right to purchase the Membership Interest; (b) the execution, delivery and performance of this Assignment by Assignee and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignee is a party or by which Assignee or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Interest or the violation of which is likely to have a material and adverse effect upon the Membership Interest; (c)  Assignee has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Interest and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (d) Assignee has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Interest; (e) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Interest; and (f) Assignee has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

C.  These representations and warranties shall survive the date of this Assignment.

**No Rights in Third Parties.**  Nothing expressed or implied in this Assignment is intended to confer upon any person, other than Assignor and Assignee, and their respective successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Assignment.

**Successors and Assigns.**  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and legal representatives.

**Release.**

A.        On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignor hereby remises, releases and forever discharges Assignee, its past, present and future members, managers, officers, directors, employees, principals,

agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent (including, without limitation, those relating to Assignor's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein), from the beginning of time to the date of this Assignment.

B.        On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignee hereby remises, releases and forever discharges Assignor, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of this Assignment.

**Indemnification.** Assignor agrees to indemnify, defend and hold harmless the Assignee and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignor contained herein. Assignee agrees to indemnify, defend and hold harmless the Assignor and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignee contained herein. These indemnifications shall survive the date of this Assignment.

**Governing Law.** This Assignment shall be governed by, construed and enforced according to the laws of Delaware.

**Headings.** The section headings contained herein are for convenience only and are not intended to define or limit the contents of such sections.

**IN WITNESS WHEREOF**, Assignor has caused this Assignment to be executed on the date first above written.

_____
Bret A. Broaddus

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 (                    ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, ___LAW___ DIVISION

(Name all parties)

Bret A. Broaddus

v.

Kevin Shields

No. 08-L-005933

Sheriff, Please Serve:
KEVIN SHIELDS
2121 ROSECRANS STE 3321
EL SEGUNDO CA 90245

## SUMMONS

To each Defendant:

    YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

    ☑  Richard J. Daley Center, 50 W. Washington, Room _801_____, Chicago, Illinois 60602

| | | |
|---|---|---|
| ❑ District 2 - Skokie<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ❑ District 3 - Rolling Meadows<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ❑ District 4 - Maywood<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ❑ District 5 - Bridgeview<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ❑ District 6 - Markham<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ❑ Child Support<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

    This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, _____JUN 26 2008_____, _____

(SEAL)

_____
Clerk of Court

Atty. No.: 91781
Name: Weissberg and Associates, Ltd.
Atty. for: Plaintiff
Address: 401 S. LaSalle St., Suite 403
City/State/Zip: Chicago, IL 60605
Telephone: 312-663-0004

Date of service: _____, _____
(To be inserted by officer on copy left with defendant
or other person)

Service by Facsimile Transmission will be accepted at: _____ 312 _ _ 663-1514
                                               (Area Code)  (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| BRET A. BROADDUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| KEVIN SHIELDS, | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF KEVIN SHIELDS**

Kevin Shields swears or affirms on oath that the following statements are true:

1.      I am of legal age and I have personal knowledge of the matters set forth in this Affidavit.  If called to testify as a witness, I would and could testify to such matters competently.

2.      I am the defendant in the above-captioned lawsuit.  I was served with a copy of the Complaint and Summons on July 7, 2008.

3.      I am a citizen of the United States and of the State of California.  I reside at 3421 Manhattan Avenue, Manhattan Beach, California 90266.   My driver's license is issued by the State of California, and I am registered to vote in the State of California.

FURTHER AFFIANT SAYETH NAUGHT.

_____
KEVIN SHIELDS

SUBSCRIBED AND SWORN TO
before me this **4ᵗʰ** day of
August, 2008.

_____
Notary Public

My commission expires: <u>April 14, 2010</u>

DEBI CALLARI
Commission # 1658253
Notary Public - California
Los Angeles County
My Comm. Expires Apr 14, 2010