IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRET A. BROADDUS.,                    )
                                      )
       Plaintiff/Counter-Defendant,  )
                                      )      No. 08 C 4220
  v.                                  )
                                      )
KEVIN SHIELDS,                        )
                                      )
       Defendant/Counter-Plaintiff.  )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Counter-Plaintiff Kevin Shields's ("Shields") Motion for Summary Judgment on the Counterclaims. For the following reasons, the Court grants Shields's motion for summary judgment.

## BACKGROUND

**I.    Northern District of Illinois Local Rule 56.1**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts

of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response, but instead must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement … of any additional facts that require the denial of summary judgment.'").

Moreover, the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, *see Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006), and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses. Also, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon*, 233 F.3d at 528. Further, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon*, 401 F.3d at 809-10. Finally, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). With these standards in mind, the Court turns to the relevant facts of the case.

## II. Relevant Facts

Shields is a citizen of the United States and of California. (R. 188-1, Counter-Pl.'s Rule 56.1 Statement of Undisputed Facts, ¶ 1.) Plaintiff/Counter-Defendant Bret A. Broaddus ("Broaddus") is a citizen of Illinois. *Id.* at ¶ 2. Will Partners, LLC ("Will Partners") was organized in 1998 for the purposes of acquiring and improving real property in Monee, Illinois. *Id.* at ¶ 3. The First Amended and Restated Limited Liability Company Agreement of Will Partners, LLC dated April 6, 2000 (the "LLC Agreement") controls the relationships of its members, including Shields and Broaddus. *Id.* at ¶ 6. The LLC Agreement contains a prevailing party fee-shifting provision which provides:

> **Attorneys Fees.** In any action or proceeding between or among the Members arising out of this Agreement, the unsuccessful member shall pay to the prevailing Member all costs and expenses, including, without limitation, reasonable attorneys fees incurred by the prevailing Member in such action or proceeding whether or not such action or proceeding is prosecuted to judgment.

*Id.* at ¶ 7, Ex. B, LLC Agreement at § 13.12.

On or about November 2, 2000, Broaddus entered into an agreement with Shields and Don Pescara ("Pescara") (the "November 2000 Agreement"). *Id.* at ¶ 8. Pursuant to the November 2000 Agreement, Broaddus acquired (i) a 10% membership interest in Will Partners, and (ii) a membership participation in Will Partners' distributions. *Id.* at ¶ 10. The November 2000 Agreement also contains a prevailing party fee-shifting provision which provides:

> Should it be necessary for any party to this Agreement to initiate legal proceedings to adjudicate any issues arising hereunder or under any document executed pursuant

> hereto, the prevailing party in such legal proceedings shall be entitled to reimbursement of such party's attorneys' fees, costs, expenses and disbursements (including the fees and expenses of expert witnesses) reasonably incurred or made in bringing such proceedings.

*Id.* at ¶ 11, Ex. C, November 2000 Agreement at ¶ 7. Broaddus attached the November 2000 Agreement as Exhibit A to his complaint against Shields and alleged in the complaint that Shields breached a fiduciary duty to another member through an alleged misrepresentation in connection with the purchase by Shields of Broaddus's interest in Will Partners at an allegedly reduced purchase price in March 2003. *Id.* at ¶ 9.

In March 2003, Broaddus and Shields agreed that Shields would purchase Broaddus's membership interest and participation interest in Will Partners from Broaddus for a purchase price of $600,000. *Id.* at ¶ 12. Between March 26 and 30, 2003, Broaddus executed two assignments in connection with Shields's purchase of his interests: (i) a document dated March 31, 2003 that assigned his membership interest to Shields, and (ii) a document dated March 31, 2003 that assigned his membership participation to Shields (collectively, the "Assignments"). *Id.* at ¶ 13. The Assignments include a release:

> On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliate and/or other related entities, successors, assigns, estate, executor, or any one or more of them, [Broaddus] hereby remises, releases and forever discharges [Shields], its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries,

affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent, including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of the Assignment.

*Id.* at ¶ 14, Ex. D & E, Assignments at pp. 2-3. Broaddus also represented and warranted that "[Broaddus] has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the [Assignments] and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company . . . ." *Id.* at ¶ 15, Ex. D & E, Assignments at pp. 1-2.[1] (R. 134-1, ¶ 18.) The Assignments also contain indemnification clauses which provide:

[Broaddus] agrees to indemnify, defend and hold harmless [Shields] and its agents,

---

[1] Broaddus admits Shields has accurately quoted the terms contained in this provision but, citing to his Rule 57 Statement of Additional Facts without identifying any particular fact or piece of evidence, "denies said terms were accurate recitations of the agreement negotiated between Shields and Broaddus." (R. 197-1, Counter-Def.'s Resp. to Counter-Pl.'s Rule 56.1 Statement of Undisputed Facts, p. 5.). The Seventh Circuit has held that "Local Rule 56.1 makes explicit the responding party's burden of controverting the movant's position with adequate citations to the record. . . . [W]e have often repeated, that a party contesting summary judgment has a responsibility under such rules to 'highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute.'" *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (internal citations omitted). Because Broaddus fails to support his contention with any evidentiary support, the Court deems the fact admitted.

shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of [Broaddus] contained herein.

*Id.* at ¶ 16, Ex. D & E, Assignments at pp. 3-4.

On May 30, 2008, Broaddus filed an action against Shields which the parties have now adjudicated. The Court granted summary judgment in favor of Shields and against Broaddus on June 2, 2010. *Id.* at ¶ 17; R. 180, Minute Entry.

### D. Procedural History

On May 30, 2008, Broaddus filed a complaint against Shields alleging that Shields breached his fiduciary duty by purchasing Broaddus's interest in Will Partners at a reduced purchase price in March 2003. (R. 1, Compl.) On December 29, 2008, Shields filed a motion for summary judgment arguing that the five-year statute of limitations barred Broaddus's breach of fiduciary duty claim. (R. 33-1, Pls.' Mot. for Summary Judgment.) The Court denied Shields's motion for summary judgment without prejudice to renew after discovery. (R. 53, March 11, 2009, Minute Entry.) On June 2, 2010, the Court granted Shields's Renewed Motion for Summary Judgment on each of Broaddus's claims. (R. 180-1, Minute Entry.) The only remaining claims at issue in this case are Shields's counterclaims against Broaddus, in which Shields seeks to enforce a contractual indemnity provision and two contractual fee-shifting provisions.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Knight v. Wiseman*, 590 F.3d 458 (7th Cir. 2009). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009); *see Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (the nonmoving party must present "evidence on which the jury could reasonably find for the nonmoving party.").

## ANALYSIS

Shields seeks a judgment that Broaddus must pay the attorneys' fees and expenses that Shields incurred during the pendency of the litigation. Count I seeks attorneys' fees and expenses pursuant to the Assignments, Count II seeks attorneys' fees and expenses pursuant to the LLC Agreement, and Count III seeks attorneys' fees and expenses pursuant to the November

2000 Agreement. Delaware law governs the Assignments, the LLC Agreement, and the November 2000 Agreement. (R. 188-1, Ex. B, LLC Agreement at § 13.9; Ex. C, November 2000 Agreement at ¶ 8; Exs. D & E, Assignments at pp. 3-4.)

Before turning to the merits of Shields's claims, the Court notes that in his opposition to Shields's claims Broaddus presented a series of factual averments and arguments premised on his proposed affirmative defenses. On August 6, 2010, during the briefing on the motion for summary judgment, the Court denied Broaddus leave to file the proposed affirmative defenses because they were untimely and would result in undue prejudice to Shields. (R. 201, Minute Entry.) The Court accordingly disregards the facts and arguments presented by Broaddus as they relate to the proposed affirmative defenses.

## I. Count I - The Assignments

Broaddus executed the Assignments in March 2003. The Assignments contain a release by Broaddus of all claims against Shields "arising from the beginning of time to the date of this Assignment." (R. 188-1, ¶ 14.) "A ruling on indemnification is []appropriate at the summary judgment stage where there are no material factual disputes germane to indemnification and the moving party is entitled to judgment as a matter of law." *Xu Hong Bin v. Heckmann Corp.*, No. 4802-CC, 2010 WL 187018, *1 (Del. Ch. Ct. 2010).

Broaddus does not dispute that Delaware courts have interpreted indemnification clauses such as the clause contained in the Assignments to include reimbursement for attorneys' fees. *See Pike Creek Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 420 (Del. 1994) (citing *E. Mem'l Consultants, Inc. v. Gracelawn Mem'l Park, Inc.,* 364 A.2d 821, 825 (Del. 1976)) ("The rule in most jurisdictions, regardless of whether indemnity is based upon an implied or an

express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held liable."). In addition, Broaddus does not deny that he breached certain representations and warranties contained in the Assignments by bringing his action against Shields.

Broaddus instead claims that Shields cannot succeed on his indemnification claim pursuant to the Assignments because indemnification clauses are not applicable to claims directly between the indemnitor and indemnitee. Broaddus presents two pieces of legal authority to support his contention, neither of which is persuasive. First, Broaddus points to Black's Law Dictionary, which he contends demonstrates that indemnification clauses only apply to acts of third parties. The edition of Black's Law Dictionary incorrectly quoted by Broaddus in his response brief, however, defines "indemnify" as "[t]o reimburse (another) for a loss suffered because of a third party's *or one's own act* or default." BLACK'S LAW DICT. (8th Ed. 2004) (emphasis added). Broaddus also cites *DRR, L.L.C. v. Sears, Roebuck and Co.*, 949 F. Supp. 1132, 1143 (D. Del. 1996) in which the district court, based on the plain language of an indemnification provision, held that the provision "was only intended to recompense Sears for attorney's fees in actions brought by third parties." In the present case, however, the plain language of the indemnification provision is extremely broad. The provisions provides:

> On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliate and/or other related entities, successors, assigns, estate, executor, or any one or more of them, [Broaddus] hereby remisses, releases and forever discharges

9

> [Shields], its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent, including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of the Assignment.

*Id.* at ¶ 14, Ex. D & E, Assignments at pp. 2-3. Contrary to the provision in *DRR*, 949 F. Supp at 1143, there is no language in the Assignments' contractual provision limiting indemnification to third parties. Indeed, Delaware courts recognize and enforce indemnification provisions that allow an indemnitee to recover fees and costs for defending a suit filed by the indemnitor. *See, e.g., LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 197-198 (Del. 2009) ("In a contract such as the Merger Agreement, in which one party agrees to indemnify the other for damages, including attorneys' fees, arising from that party's breach of the contract, the term 'indemnity' has a distinct legal meaning that permits the party seeking indemnification to bring a separate cause of action for indemnification after first bringing a successful action for breach of the contract.")

Because Delaware law is clear that indemnification provisions may apply to the parties to the contract, and not just third parties, Broaddus has failed to demonstrate a genuine issue of material fact with respect to Shields's indemnification claim pursuant to the Assignments. The Court therefore grants summary judgment for Shields on Count I of his counterclaims.

**II.     Count II - The LLC Agreement**

Shields is also entitled to his attorneys' fees and expenses under the LLC Agreement. The LLC Agreement contains a prevailing party fee-shifting provision which provides:

> **Attorneys Fees.** In any action or proceeding between or among the Members arising out of this Agreement, the unsuccessful member shall pay to the prevailing Member all costs and expenses, including, without limitation, reasonable attorneys fees incurred by the prevailing Member in such action or proceeding whether or not such action or proceeding is prosecuted to judgment.

*Id.* at ¶ 7, Ex. B, LLC Agreement at § 13.12. Based on his membership in Will Partners through the LLC Agreement, Broaddus's complaint alleges that Shields breached his fiduciary duty to Broaddus. (R 1-1, Compl. at ¶¶ 6-7, 10.) Significantly, Broaddus does not contest that the action clearly arises out of the LLC Agreement or that he was the unsuccessful member in the action because the Court entered summary judgment against him. *See World-Win Marketing, Inc. v. Ganley Management Co.*, 2009 WL 2534874, *3 (Del.Ch. Ct. 2009) ("The 'prevailing party' under Delaware law is the party that predominates in the litigation."). Because it is undisputed that the action arises from the LLC Agreement and Broaddus was unsuccessful in the action, Shields is contractually entitled to his costs and expenses. *See, e.g, Brandin v. Gottlieb*, 2000 WL 1005954, *1 (Del. Ch. 2000) (awarding plaintiff reasonable attorneys' fees and

11

expenses pursuant to a contractual fee-shifting provision where she was the prevailing party on the contractual claims). The Court therefore grants summary judgment for Shields on Count II of his counterclaims.

## III. Count III - The November 2000 Agreement

Shields is similarly entitled to his costs and fees pursuant to the November 2000 Agreement. The November 2000 Agreement also contains a prevailing party fee-shifting provision which provides:

> Should it be necessary for any party to this Agreement to initiate legal proceedings to adjudicate any issues arising hereunder or under any document executed pursuant hereto, the prevailing party in such legal proceedings shall be entitled to reimbursement of such party's attorneys' fees, costs, expenses and disbursements (including the fees and expenses of expert witnesses) reasonably incurred or made in bringing such proceedings.

*Id.* at ¶ 11, Ex. C, November 2000 Agreement at ¶ 7. Again, Broaddus does not contest that Shields was a prevailing party in the underlying action, but instead argues that the complaint did not arise pursuant to the November 2000 Agreement.

Broaddus's contention that "Shields' Motion offers no evidence of any connection between the November 2000 Agreement and any allegations of the Complaint" is without support. (R. 195-1, Broaddus's Resp. at 15.) Broaddus obtained his membership interest in Will Partners and a membership participation in Will Partners' cash flow pursuant to the November 2000 Agreement. Broaddus attached the November 2000 Agreement as Exhibit A to his complaint against Shields and alleged in the complaint that Shields breached his fiduciary duty

12

to another member through an alleged misrepresentation in connection with the purchase by Shields of Broaddus's interest in Will Partners in March 2003. The Assignments, executed pursuant to the November 2000 Agreement, form the basis for the March 2003 transactions. It is accordingly clear that the issues in the complaint arise both under the November 2000 Agreement and the Assignments. Moreover, the fee-shifting provision governs legal proceedings arising both under the November 2000 Agreement and documents executed *pursuant to* the November 2000 Agreement, *i.e.* the Assignments. Broaddus has therefore failed to establish a genuine issue of material fact with respect to this claim. The Court therefore grants summary judgment on Count III of Broaddus's counterclaims. *See, e.g, Brandin*, 2000 WL 1005954, *1 .

## CONCLUSION

For the foregoing reasons, Shields's motion for summary judgment on the counterclaims is granted.

DATED: September 1, 2010         ENTERED:

_____
AMY J. STEVE
United States District Court Judge