# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRET A. BROADDUS, | ) |
| | ) |
|        Plaintiff/Counter-Defendant, | ) |
| | )    No. 08 C 4420 |
|        v. | ) |
| | ) |
| KEVIN SHIELDS, | ) |
| | ) |
|        Defendant/Counter-Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 2, 2010, the Court granted Defendant/Counter-Plaintiff Kevin Shields' motion for summary judgment against Plaintiff/Counter-Defendant Bret A. Broaddus as to Broaddus' breach of fiduciary duty claim in this action based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. On September 1, 2010, the Court granted Shields' motion for summary judgment as to his counterclaims against Broaddus. Based on the fee-shifting provisions in the parties' agreements, Shields, as the prevailing party, filed the present petition for attorney's fees. For the following reasons, the Court, in its discretion, awards Shields $798,619.16 in attorney's fees.

## BACKGROUND

On May 30, 2008, Broaddus filed a complaint against Shields in the Circuit Court of Cook County alleging that Shields breached his fiduciary duty to Broaddus by purchasing Broaddus' interest in Will Partners, LLC – a limited liability company organized for the purposes of acquiring and improving real property in Monee, Illinois – at a reduced purchase price in March 2003. On August 6, 2008, Shields removed this action to the federal court. Shortly thereafter on August 12, 2008, Shields filed an answer and counterclaims seeking

attorney's fees based on (1) Broaddus' breach of the representations and warranties and general release contained in the March 31, 2003 Assignment Agreements; (2) the fee-shifting provision contained in the Limited Liability Corporation Agreement of Will Partners; and (3) the fee-shifting provision contained in a November 2000 Agreement.  As discussed, the Court granted Shields' summary judgment motions and the parties do not dispute that Shields is the prevailing party in this lawsuit.

## LEGAL STANDARDS

Because this matter involves contractual fee-shifting provisions and not a fee-shifting statute, the Court does not employ the "lodestar" method as articulated in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  *See Taco Bell Corp. v. Continental Casualty Co.,* 388 F.3d 1069 (7th Cir. 2004); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 521 (7th Cir. 1999).  More specifically, "*Medcom* and its progeny hold that, as a matter of the efficient and fair administration of the federal courts, individual scrutiny of line-item entries is neither necessary nor appropriate in contractual fee-shifting cases." *Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 774 (7th Cir. 2010); *see also Rexam Beverage Can Co. v. Bolger,* 620 F.3d 718, 738 (7th Cir. 2010) ("district court was not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness").  Thus, instead of making a detailed hour-by-hour determination of attorney's fees, federal district courts determine whether attorney's fees pursuant to a contract are "commercially reasonable." *See Medcom,* 200 F.3d at 520-21 (reasonableness standard guards against moral hazard, namely, the tendency to take additional risks if someone else pays).  Federal courts award fees based on the market value, and "the best evidence of the market value of legal services is what people pay for

2

it." *See Balcor Real Estate Holdings, Inc. v. Walentas Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir. 1996); *see also Cintas Corp. v. Perry,* 517 F.3d 459, 469 (7th Cir. 2008) ("the best evidence of whether attorney's fees are reasonable is whether a party has paid them."). Finally, the party seeking an award of attorney's fees bears the burden of proving that it is entitled to the amount sought. *See Hensley,* 461 U.S. at 433.[1]

**ANALYSIS**

In the present fee petition, Shields seeks $966,696.21 in attorney's fees and disbursements. Further, his counsel avers that as of September 16, 2010, Shields has paid $932,629.19 of this amount. In response to Shields' fee petition, Broaddus argues that Shields has not met his burden of establishing that the fees were reasonable in relation to the stakes of the case and that the Court should "drastically" reduce the fees and expenses, if not deny them in total. In support of his arguments, Broaddus maintains that this case was based on a finite set of factual and legal issues, and thus the requested fees are excessive. Broaddus, however, must keep in mind that his own conduct often delayed the present proceedings. *See Balcor Real Estate,* 73 F.3d at 153 (non-prevailing party is in no position to complain about length and breadth of discovery based on its own conduct). Meanwhile, Broaddus was aware of Shields' counterclaims for attorney's fees by no later than August 12, 2008, yet he continued his litigation

---

[1] The Seventh Circuit's decision in *Medcom* and its progeny is grounded in federal law because the review of contractual fee petitions involves requirements of proof that "concern how a particular court system, having regard for its resource constraints and the competing claims on its time, balances the cost of meticulous procedural exactitude against the benefits in reducing error costs." *Taco Bell Corp. v. Continental Casualty Co.,* 388 F.3d 1069, 1076 (7th Cir. 2004); *see also Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 774 n.21 (7th Cir. 2010); *JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp. Tbk*, ___ F.Supp.2d ___, 2010 WL 1611017, at *6 (N.D. Ill. Apr. 21, 2010). Therefore, Broaddus' reliance on Illinois case law is misplaced because Illinois law is not controlling precedent under the circumstances.

3

tactics that caused many of the delays and the resultant costs in this matter. Also, Broaddus testified that Shields owed him at least $15 million if not $38 to $40 million, although now he argues that this is only a $3 million case. (*See* R. 206-1, Ex. B, Broaddus Dep., at 79-80.) Nevertheless, this lawsuit lasted over two years, involved four different sets of attorneys for Broaddus, and concerned a significant amount of money. The Court therefore rejects Broaddus' suggestion that this was an easy, straight-forward matter. The Court now turns to Broaddus' specific objections to Shields' fee petition.

**I.     Whether Shields Paid Fees**

First, Broaddus argues that because Shields' law firm Wildman, Harold, Allen, and Dixon, LLP (the "Wildman Firm") directed Shields' fee invoices to in-house counsel at Griffin Capital – where Shields is the Chairman and Chief Executive Officer – Wildman never billed Shields and Shields never paid the attorney's fees at issue. There is sufficient evidence in the record, however, that Shields personally paid all of the legal fees at issue. (*See* 199-2, Shields 7/22/2009 Dep., at 10; R. 235-1, Matyas Aff. ¶ 3.) Meanwhile, Broaddus has failed to proffer any evidence that Shields did not pay his attorney's fees. Therefore, this first argument fails.

Broaddus also argues that certain Wildman Firm invoices reference an insurer that is "presumably the insurance carrier for Griffin Capital," which "begs the question whether the payments made to the Wildman Firm came from an insurance carrier for Griffin Capital." (R. 232-1, Resp. Brief, at 7.) Not only is Broaddus' argument vague and unsupported, but under the collateral source rule, the fact that Griffin Capital's insurer may have paid certain attorney's fees does not absolve Broaddus from paying any such fees because the "purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated but rather to prevent the

4

tortfeasor from paying twice." *Flowers v. Komatsu Mining Sys., Inc.,* 165 F.3d 554, 558 (7th Cir. 1999) (citation and quotations omitted); *see also E.E.O.C. v. O'Grady,* 857 F.2d 383, 389 (7th Cir. 1988) ("The rule also prevents one who pays for insurance against an accident from being forced to donate the proceeds to the person who causes the accident.") (citation and quotations omitted). Here, Broaddus will not have to pay these fees twice and should not be rewarded because Shields procured insurance in the first instance. As such, the Court will not deduct any insurance payments from the requested attorney's fees as Broaddus argues.

## II. Overstaffing

Next, Broaddus maintains that the Wildman Firm overstaffed this case as evidenced by the lack of proportionality between the amount at risk and the amount billed for the defense of this lawsuit. First, Broaddus argues that too many attorneys worked on this case. The Court agrees. Over the two year period, the Wildman Firm staffed ten attorneys, one summer associate, and ten legal assistants to work on this case. Out of the ten attorneys, four of them did the majority of the work – equity partner Thomas Matyas, income partner Alison Conlon, associate attorney Megan Lazar, and associate attorney Leah McGowan. And, although the other six lawyers and summer associate billed relatively few hours, the decision to staff ten attorneys and a summer associate on this case is excessive and unreasonable. The Court therefore deducts the hours billed by these extra attorneys and summer associate for a total deduction of $23,072.61. Meanwhile, Broaddus' argument that the Wildman Firm billed too many hours is unsubstantiated and does not take into consideration that Broaddus himself caused the majority of the delays in these proceedings compounding the time and money involved in this lawsuit.

5

In addition, the billing record reveals that lead attorney Matyas delegated most of the attorney work to Conlon and Lazar, who bill at a lower rate than Matyas. More specifically, Maytas billed 21% of total attorney hours whereas Conlon and Lazar collectively billed 71% of the total attorney hours. (*See* 235-1, Ex. B, Ex. 1, Summ. of Percent.) In addition, Matyas' fees were 31% of the total attorney's fees and Conlon and Lazar's fees were 63% of the attorney's fees. (*Id.*) The Court thus rejects Broaddus' argument that the lead attorney, Maytas, did not reasonably exercise discretion in delegating the necessary tasks.

### III. Time Spent on Other Matters

Broaddus also takes issue with the Wildman Firm billing hours for tangential matters, including the review and monitoring of his other lawsuits. Shields, on the other hand, maintains that the time spent on inquiries into Broaddus' other business litigation, divorce, bankruptcy, and finances was reasonable and in direct response to issues Broaddus created. More specifically, Shields argues that Broaddus put his diminished mental capacity into issue because Broaddus argued that he was not mentally competent to execute the March 31, 2003 Assignment Agreements. (*See* R. 46-2, Ex. A, Broaddus Aff. ¶¶ 7, 13.) As such, Shields maintains that discovery focusing on Broaddus' finances and day-to-day activities was necessary to establish whether Broaddus had the mental capacity to enter into the parties' agreements. Shields' legal arguments in support of this proposition, however, rely on social security cases involving whether an individual's mental impairment affects his ability to work. *See Stebbins v. Barnhart*, No. 03 C-0117, 2003 WL 23200371, at *12 (W.D. Oct. 21, Wis. 2003) (citing *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994)); *see also* 20 C.F.R. § 404.1529. Needless to say, these cases are not persuasive.

6

Moreover, Shields argues that Broaddus' finances and the way he conducted himself in other litigation throughout the relevant time period was highly probative of whether Broaddus suffered any "cognitive neurological deficit" as Broaddus alleged. Shields, however, does not substantiate this argument with legal authority or provide any further context in which the Court could make any such determination. Because Shields has failed in his burden of establishing that these fees are commercially reasonable and related to the present litigation and – after the Court's careful review of these fee entries – the Court deducts fifteen percent of the requested fees for a total reduction of $145,004.44.

## IV. The Lodestar Method

The remainder of Broaddus' arguments ask the Court to review certain entries to ascertain whether the fees are reasonable, for example, Broaddus contends that the eleven hours that the Wildman Firm billed for the filing the notice of removal is excessive. In essence, Broaddus is arguing that the Court should conduct a line-by-line review as if a fee-shifting statute governed this fee dispute instead of the contractual provisions discussed above. The Seventh Circuit, however, teaches that because of "the resulting uncertainty about reimbursement, [the moving party] ha[s] an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review." *Taco Bell,* 388 F.3d at 1075-76. In short, under the circumstances, the Court's task is to assess whether the fees are commercially reasonable, which they are, especially in light of Shields having paid $932,629.19 of the $966,696.21 requested. *See Cintas Corp.,* 517 F.3d at 469 ("the best evidence of whether attorney's fees are reasonable is whether a party has paid them."). In fact, Shields paid approximately $850,000 of these fees

7

before he knew that the contractual fee-shifting provisions would apply. *See Taco Bell,* 388 F.3d at 1075-76. In other words, because Shields has paid these fees in the ordinary course of business, there is strong evidence that the present fee request is commercially reasonable – except for the tangential fees and number of attorneys staffed on this case – as discussed above. *See Medcom,* 200 F.3d at 520. Moreover, because Broaddus has failed to present evidence that these fees are not commercially reasonable, Shields is entitled to recover the total amount of fees in the amount of $798,619.16.

## CONCLUSION

For these reasons, the Court grants Shields' fee petition and awards Shields $821,691.77 in attorney's fees.

Dated: November 12, 2010

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Judge**