**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRET A. BROADDUS, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | No. 08 C 4420 |
| v. | ) | |
| | ) | |
| KEVIN SHIELDS, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant/Counter-Plaintiff Kevin Shields' motion for the entry of an order directing Stanley, LLC, BNR Revocable Trust, Bret A. Broaddus, Associated Bank, Lake Forest Bank & Trust and Wayne Hummer Investments, LLC (d/b/a Wintrust Wealth Management), to immediately turn over certain assets to Shields' undersigned counsel. For the following reasons, the Court grants Shields' motion.

## BACKGROUND

On June 2, 2010, the Court granted Shields' motion for summary judgment against Plaintiff/Counter-Defendant Bret A. Broaddus as to Broaddus' breach of fiduciary duty claim. On September 1, 2010, the Court granted Shields' motion for summary judgment as to his counterclaims against Broaddus, which included a counterclaim for Shields' attorney's fees. Based on the fee-shifting provisions in the parties' agreements, the Court awarded Shields, as the prevailing party, $798,619.16 in attorney's fees on November 12, 2010. On December 16, 2010, the Court entered final judgment in favor of Shields and against Broaddus in the amount of

$798,619.16, plus post-judgment interest pursuant to 28 U.S.C. § 1961.[1]  The Seventh Circuit affirmed the Court's summary judgment order and fee award on December 21, 2011.  *See Broaddus v. Shields*, --- F.2d ----, No. 11-1117, 2011 WL 6396542 (7th Cir. Dec. 21, 2011).

Broaddus has not paid Shields the amount he owes pursuant to the final judgment. Accordingly, Shields has issued a number of citations to discover assets to Broaddus and various trusts, banks, and financial institutions in an effort to recover his attorneys' fees.  Shields now seeks an order from this Court ordering Associated Bank, Lake Forest Bank & Trust Co., and Wayne Hummer Investments, LLC (d/b/a Wintrust Wealth Management) to turn over certain of Broaddus' assets to satisfy, in part, the judgment.

## I.    Wintrust Wealth Management and Lake Forest Bank & Trust Co.

On March 1, 2011, the Clerk of the Court issued, and Shields served, a Citation to Discover Assets on Wintrust Wealth Management Company ("Wintrust") through its Authorized Agent Jim Sommerfield ("Wintrust Citation").[2]  (R. 280.)  Wintrust filed an answer to the Wintrust Citation on April 15, 2010.  (R. 293.)  In its answer, Wintrust stated that it has an account titled "Lake Forest Bank & Trust Collateral Account FBO Stanley LLC" ("Wintrust Investment Account") with assets containing $1,411,010.63 as of February 28, 2011.  (*Id.* ¶ 2.) It further stated that Broaddus is an authorized signator on that account.  (*Id.*)

On March 3, 2011, the Clerk of the Court issued, and Shields served, a Citation to Discover Assets on Lake Forest Bank & Trust Co. ("Lake Forest"), which service was accepted

---

[1]  The parties agree that the interest rate is 0.29% for the relevant period.  As such, the judgment and accrued interest as of December 22, 2011 is $800,973.23.  (R. 323 at 1, n.1.)

[2]  Wayne Hummer Investments does business as "Wintrust Wealth Management" (R. 315-10).  Therefore, the two entities are one and the same for the purposes of this Order.

by David Stein, its attorney ("Lake Forest Citation").[3]  (R. 285.)  Lake Forest filed an answer to

the Lake Forest Citation on April 15, 2010.  (R. 292.)  Lake Forest's answer states that it is

holding $11,745.47 in checking account number *****587 in Stanley, LLC's ("Stanley") name

("Lake Forest Checking Account").  (*Id.*)  Stanley is a Florida limited liability company formed

on December 8, 2010, after the Court granted summary judgment against Broaddus and Shields'

Fee Petition, and mere days before the Court entered final judgment against Broaddus.  (R. 315-

7.)  Broaddus, as Trustee of the BNR Revocable Trust, holds a 99% interest in Stanley.

Broaddus' daughter, Rachel Broaddus, owns the remaining 1%.  (R. 315-8; 315-9.)  Broaddus is

an authorized signator on the Lake Forest Checking Account.  (R. 292 ¶ 5.)

        Lake Forest made two loans to Broaddus that are relevant to this case.  Broaddus took out

both loans on August 30, 2010 in his name only, and he pledged assets as collateral to secure

both loans.  (R. 320 at 2.)  The first loan was loan number ***354-1 in the amount of

$500,000.00 ("354-1 Loan").  (*Id.* at 2-3; R. 320-2; R. 320-3.)  Broaddus pledged the Wintrust

Investment Account, which at that point in time was account number ***9130, as collateral for

that loan.  (*Id.*; R. 320-3.)  During late November and early December 2010, Broaddus initiated a

refinance of the 354-1 Loan by a credit agreement in which the borrowers were Broaddus and

Stanley.  (R. 320-5.)  The refinance was given loan number ***913-1, and Broaddus executed

the loan documents on December 28, 2010.  (*Id.*)  At the same time, he initiated a transfer of the

Wintrust Investment Account from his own name to Stanley's name, and the account was

---

        [3]  Lake Forest is a wholly-owned subsidiary of Wintrust Financial Corporation, a publicly
traded financial holding company.  Wayne Hummer Investments, LLC is a wholly-owned
subsidiary of North Shore Community Bank & Trust Company, which, in turn, is also a wholly-
owned subsidiary of Wintrust Financial Corporation.  (R. 320 at 1, n.1.)

renumbered to ***1110.[4]  (R. 315-12.)  The assets in the previous Wintrust Investment Account

(account ***9130) were moved into the new Wintrust Investment Account (account ***1110)

between January and February 2011, and the name on that new account is "Lake Forest Bank &

Trust Collateral Account FBO Stanley LLC."  (R. 320 at 3; R. 320-5; R. 320-6.))  Broaddus is

currently in default on the loan, and the balance due is $299, 354.10, inclusive of interest and

late fees.  (R. 320 at 4; R. 292 ¶ 11.)

Broaddus and Standard Bank & Trust Company, as Trustee under a trust agreement dated

September 27, 2007, took out a second loan from Lake Forest in the amount of $910,000.00.  (R.

320-10.)  This loan is in default and in foreclosure in the Circuit Court of Cook County.  *See*

*Lake Forest Bank & Trust v. Standard Bank and Trust, et al.*, No. 11 CH 27994.  As of

November 15, 2011, the balance due on this loan is $962,140.13 plus attorney's fees and costs.

(R. 320 at 4.)  The foreclosure remains pending and judgment has not been entered.  Broaddus

pledged the Wintrust Investment Account, along with other assets, as collateral for this loan.  (R.

320 at 5-12; R. 320-2; R. 320-11.)

On December 22, 2011, Shields filed a Motion to Approve a written stipulation entered

between Shields, Wintrust and Lake Forest regarding priority to the funds in the Wintrust

Investment Account and the Lake Forest Checking Account.  (R. 324.)  The Court approved the

stipulation and entered an order re same on January 3, 2012 (the "Stipulation and Order").  (R.

326; R. 327.)  Pursuant to that Stipulation and Order, Wintrust and Lake Forest are entitled to

---

[4] Email correspondence between Broaddus and Wintrust from February 2011 shows that
Broaddus intended to remove his name and social security number from all of his accounts in
order to avoid having to turn over the money in those accounts to Shields in satisfaction of the
Court's order.  (R. 320-8.)

4

set off $1,307,396.19 from the assets in the Wintrust Investment Account. Wintrust and Lake

Forest shall hold the balance of that account, in the approximate amount of $147,318.00,

pursuant to the pending Citations under further order of the Court. (*Id.*) Wintrust and Lake

Forest also shall hold the amount of $11,745.47 in the Lake Forest Checking Account pending

Citations until further order of the Court. (*Id.*)

## II.      Broaddus, Associated Bank, Stanley, and the BNR Revocable Trust

On February 9, 2011, the Clerk of the Court issued, and Shields served, a Citation to

Discover Assets on Broaddus ("Broaddus Citation") via certified mail. (R. 266.) Proof of

service was returned on March 21, 2011. (R. 315-1.) Broaddus has not answered the Citation,

nor has he appeared in Court to respond to it.

On March 8, 2011, the Clerk of the Court issued, and Shields served, a Citation to

Discover Assets on Associated Bank, NA ("Associated Bank Citation"). Associated Bank filed

an answer dated March 14, 2011, stating that it is holding $1,500.41 in an account in the name of

Bret A. Broaddus. (R. 289.)

On October 4, 2011, the Clerk of the Court issued, and Shields served, a Citation to

Discover Assets on Stanley through its Registered Agent Carlos Arazoza ("Stanley Citation").

(R. 315-5.) Stanley has not answered the Citation, nor has it appeared in Court to respond to it.

On October 4, 2011, the Clerk of the Court issued, and Shields served, a Citation to

Discover Assets on BNR Revocable Trust ("Revocable Trust") via the Trustee, Bret A.

Broaddus by certified mail ("Revocable Trust Citation"). (R. 315-6.) The Revocable Trust has

not answered the Citation, nor has it appeared in Court to respond to it. Broaddus is the Settlor

of the Revocable Trust with the right to all income from the trust and the authority to revoke and

terminate the trust as well as the authority to distribute the assets of the trust as he wishes. (R. 315-9 at 2, 5.) The Revocable Trust is a self-settled spendthrift trust and is established under Florida law.[5] (*Id*. at 7-8; 14.) Broaddus executed the trust agreement on October 20, 2010 (*id.* at 15-17), approximately two months after the Court granted summary judgment against Broaddus and during the time the parties were briefing Shields' Fee Petition. *See* R. 204 and R. 205 (September 1, 2010). When it was created, the Revocable Trust's corpus consisted of $100.00. (R. 315-9 at 18.)

## LEGAL STANDARD

### I. Supplementary Proceedings

District courts follow the "law of supplementary proceedings of the state in which they sit." *Laborers' Pension Fund v. Pavement Maint., Inc*., 542 F.3d 189, 191 (7th Cir. 2008); Fed.R.Civ.P. 69(a). Accordingly, the Court proceeds under the Illinois statute governing supplementary proceedings, 735 ILCS § 5/2-1402. Supplementary proceedings under § 2-1402 are designed to assist a judgment creditor in discovering assets of the judgment debtor in order to satisfy an unpaid judgment. *Pyshos v. Heart-Land Dev. Co.*, 258 Ill. App.3d 618, 622-23, 196 Ill. Dec. 889, 630 N.E.2d 1054 (1st Dist. 1994). "Section 2-1402 is to be construed liberally, not

---

[5] Black's Law Dictionary defines a "self-settled trust" as one "in which the settlor is also the person who is to receive the benefits of the trust, usu. set up in an attempt to protect the trust assets from creditors." Black's Law Dictionary 1518 (7th Ed. 1999); *see also In re Quaid*, No. 6:11-cv-0280-ACC, 2011 WL 5572605, at *3 (Nov. 16, 2011) ("A trust is self-settled if a settlor is also the beneficiary) (citation omitted). A "spendthrift trust" is one "that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest." Black's Law Dictionary 1518 (7th Ed. 1999); *see also In re Quaid*, 2011 WL 5572605 at *1 ("a spendthrift clause . . . shield[s] assets from any creditors of the beneficiaries"). The Revocable Trust's "spendthrift provision" is located on pages 7-8 of the trust agreement. (R. 315-9.)

6

only providing for the discovery of a debtor's assets and income, but also vesting the courts with 'broad powers to compel the application of discovered assets or income to satisfy a judgment.'" *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App.3d 873, 878, 232 Ill. Dec. 46, 697 N.E.2d 788, 791 (1st Dist. 1998) (citing *Kennedy v. Four Boys Labor Serv., Inc.*, 279 Ill. App.3d 361, 367, 216 Ill. Dec. 160, 664 N.E.2d 1088 (2d Dist. 1996)); *accord Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135 (7th Cir. 2001). The relevant inquiries in a supplemental proceeding are "(1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment; or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Schak v. Blom*, 334 Ill. App.3d 129, 133, 777 N.E.2d 635, 267 Ill. Dec. 832 (1st Dist. 2002); *see also Star Ins. Co. v. Risk Marketing. Grp., Inc.*, 561 F.3d 656, 660-61 (7th Cir. 2009).

## II.     Motion for Turnover of Assets

Under § 2-1402(m), proper service of a citation to discover assets creates a lien that "binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor ..." 735 ILCS § 5/2-1402(m). When the citation has been served on a third party, that lien reaches "all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor. . . ." 735 ILCS § 5/2-1402(m)(2). The lien is perfected on the date the citation is served. *Cacok v. Covington Electric Co., Inc.*, 111 F.3d 52, 53 (7th Cir. 1997).

"A district court may ... summarily compel the application of discovered assets to satisfy a judgment." *Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135 (7th Cir. 2001) (citing *Matthews v. Serafin*, 319 Ill. App.3d 72, 77, 253 Ill. Dec. 201, 744 N.E.2d 934 (3d Dist.

7

2001) and *Mid-Am. Elevator Co. v. Norcon, Inc.*, 287 Ill. App.3d 582, 587, 223 Ill. Dec. 202,

679 N.E.2d 387 (1st Dist. 1996)).  "Before a judgment creditor may proceed against a third party

who is not the judgment debtor, the record must contain some evidence that the third party

possesses assets of the judgment debtor."  *Schak*, 334 Ill. App.3d at 133.  "[T]he burden lies with

the petitioner to show that the citation respondent possesses assets belonging to the judgment

creditor."  *Id.* (citation omitted).

## ANALYSIS

Shields requests that the Court enter an order directing 1) Associated Bank to

immediately turn over $1,500.41 from Broaddus' checking account to Shields; 2) Lake Forest to

immediately turn over $11,747.47 from Stanley's checking account number *****587 to

Shields; and 3) Wintrust to immediately turn over $787,563.65 to Shields.  (R. 315 at 5.)

Pursuant to the Stipulation and Order, Shields has agreed to Wintrust's and Lake Forest's right to

setoff such that the amount he now requests from the Wintrust Investment Account is

$147,318.00.  (R. 327.)  Shields further requests that the Court order that the liens associated

with the citations served on Broaddus, BNR Revocable Trust, Stanley, LLC, Associated Bank,

SMB Equity, LLC, Bradley Associates LLP, Wintrust, and Lake Forest remain in full force and

effect, and that those citation respondents be ordered to refrain from "making any transfer or

disposition of, or interfering with, any property not exempt from execution or garnishment

belonging to Broaddus or to which the judgment debtor may be entitled or which may be

acquired by or become due to Broaddus and from paying over or otherwise disposing of any

money not so exempt, which is due or becomes due to Broaddus, until further order of the

Court."  (R. 315 at 5-6.)

Broaddus does not dispute any of the factual assertions set forth in, or evidence attached to, Shields' motion for turnover or Lake Forest's and Wintrust's response to that motion. Neither the parties nor Associated Bank, Lake Forest, or Wintrust requested a hearing on Shields' motion.[6] "Proceedings to enforce judgments are meant to be swift, cheap, [and] informal," and judges have discretion as to the procedure in such proceedings. *See Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225-27 (7th Cir. 1993) (holding that the district court did not err by granting motion for turnover on papers alone where there were no genuine issues of material fact.) Based on the record before the Court, a hearing is not necessary in this case.

As noted above, the funds at Associated Bank are held in Broaddus' name. Associated Bank does not object to the turnover of those funds, and Broaddus objects to the turnover only to the extent that he argues Shields' motion is untimely. The funds at Wintrust are held in an account "for the benefit of" Stanley. (R. 320 at 3.) The funds at Lake Forest are also in Stanley's name. (R. 292 ¶ 5.) Broaddus, through the Revocable Trust, owns 99% of Stanley.

## I.     Shields May Recover Funds Belonging to the BNR Revocable Trust

Broaddus argues that, under Illinois law, Shields cannot "summarily execute" against the assets of the BNR Revocable Trust and instead must meet the requirements set forth in the Illinois Fraudulent Transfer Act ("IFTA") before he can recover the trust's assets. (R. 321 at 2-

---

[6] Pursuant to Illinois law, "if the judgment creditor claims entitlement to the assets of a third party in supplemental proceedings and the third party contests the claim, a trial must be held." *Harmon v. Ladar Corp.*, 200 Ill. App.3d 79, 83, 146 Ill. Dec. 110, 557 N.E.2d 1297 (Ill. App. Ct. 1990) (holding that it was error for a trial court to summarily deny a motion for turnover order where the parties did not file motions for summary judgment or stipulate to entry of judgment based on the pleadings, citation examinations, and other stipulated evidence). Associated Bank does not oppose Shields' motion. Wintrust and Lake Forest initially opposed the motion, but that opposition is moot in light of the Stipulation and Order.

3.)  Shields, on the other hand, argues that Florida law governs the question of whether Shields

may recover the Revocable Trust's assets, and further contends that it need not establish

fraudulent transfer to reach Broaddus' assets in the trust under either Florida law or Illinois law.

(R. 315 at 3; R. 323 at 2-3.)

### A.      Choice of Law

The Court begins with the choice of law question.  Shields argues that Florida law applies

because the Revocable Trust was created under Florida law.  Broaddus ignores Shields'

argument and argues his points under Illinois law only.  Therefore, he has waived any argument

that Florida law does not apply.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)

("Failure to respond to an argument . . . results in waiver.").

A district court sitting in diversity, as here, applies the choice-of law rules of the state in

which it sits.  *See Malone v. Corrections Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009).

"Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law

chosen is not contrary to Illinois's fundamental public policy."  *Thomas v. Guardsmark, Inc.*,

381 F.3d 701, 705 (7th Cir. 2004) (citation omitted); *see also Dexia Credit Local v. Rogan*, 624

F. Supp.2d 970, 975-76 (N.D. Ill. 2009) ("*Dexia I*").  That rule applies to the interpretation of

trusts in addition to other contracts.  *See Dexia I*, 624 F. Supp.2d at 976 (citing *Ranger v.

Ranger*, 379 Ill. App.3d 752, 757, 318 Ill. Dec. 519, 883 N.E.2d 750 (4th Dist. 2008)).

Accordingly, the Court will apply Florida law applies unless it is contrary to Illinois'

fundamental public policy.

Pursuant to Florida law, "[t]he property of a revocable trust is subject to the claims of the

settlor's creditors during the settlor's lifetime to the extent the property would not otherwise be

10

exempt by law if own directly by the settlor." Fla. Stat. § 736.0505(1)(b) (2010).[7]  The Court

agrees with Shields that Florida law on this issue is not contrary to Illinois public policy.  Illinois

courts have long recognized that a judgment debtor may not use self-settled trusts to shield assets

from creditors.  *See, e.g., Crane v. Ill. Merchants Trust Co.*, 238 Ill. App. 257, 262-63 (1st Dist.

1925) ("The general rule is well settled that a person cannot settle his estate in trust for his own

benefit, so as to be free from liability for his debts.") (citation omitted); *In re Marriage of*

*Chapman*, 297 Ill. App.3d 611, 620, 231 Ill. Dec. 811, 697 N.E.2d 365, 371 (1st Dist. 1998)

(holding that the creditor could recover the judgment debtor's assets held in a self-settled

spendthrift trust); *cf. Dexia I*, 624 F. Supp.2d at 976 (holding that Bahamian law permitting the

use of self-settled spendthrift trusts to shield assets from a settlor's creditors is contrary to

Illinois public policy).

The Illinois Appellate Court's decision in *Rush v. Sessions*, 353 Ill. Dec. 628, 956 N.E.2d

490 (Ill. App. Ct. 1st Dist. 2011) did not change Illinois' long-standing policy on this issue.[8]  In

*Rush*, the Illinois Appellate Court held that the judgment creditor could not state a claim for

fraudulent transfer based solely on the assertion that self-settled trusts are *per se* fraudulent.

Instead, the court held, a judgment creditor must satisfy the IFTA's requirements in order to

bring a successful fraudulent transfer claim.  *Id.* at 635-36.  Under even the most restrictive

reading of that opinion, it does not stand for the proposition that Illinois has a fundamental

---

[7]  This statute became effective on July 1, 2010, before Broaddus executed the Revocable Trust agreement.

[8]  The Illinois Supreme Court granted the judgment creditor's petition for appeal in *Rush* on November 30, 2011.  *See* http://www.state.il.us/court/SupremeCourt/PLA_Ann/ **2011/113011.pdf (accessed December 30, 2011).**

public policy of allowing judgment debtors to shield their assets from creditors in self-settled

trusts.  Therefore, because Florida law on this issue is not contrary to Illinois' public policy,

Florida law applies.  As explained below, however, even if Illinois law applies, the outcome

remains the same.

### B. Under Florida Law, Shields May Recover Broaddus' Interest in the Revocable Trust

The Revocable Trust is a self-settled spendthrift trust, over which Broaddus retains

complete dominion and control.  *See* R. 315-9 at 2, 5.  He has the right to, among other things,

receive all income from the trust as well as the right to distribute all of the trust's assets.  (*Id.*)

Therefore, pursuant to Florida law, Shields may recover Broaddus' interest in the Revocable

Trust.  *See* Fla. Stat. § 735.0505(1)(a) ("Whether or not the terms of a trust contain a spendthrift

provision, . . . [t]he property of a revocable trust is subject to the claims of the settlor's creditors

during the settlor's lifetime to the extent the property would not otherwise be except by law if

owned directly by the settlor"); *Menotte v. Brown* (*In re Brown*), 303 F.3d 1261, 1265-66 (11th

Cir. 2002) (applying Florida law and holding that a debtor who created a trust for her own

benefit could not shield her interest in the trust from creditors) (citing cases); *In re Nichols*, 434

B.R. 906, 909 (Bankr. M.D. Fla. 2010) (debtor's interest in a self-settled spendthrift trust over

which the debtor, as settlor, retained complete dominion and control, was subject to creditors'

claims); *Dexia I*, 624 F. Supp.2d at 980 (under Florida law, "[i]f a settlor creates a self-settled

trust, i.e., a trust under which the settlor is one of the beneficiaries, a judgment creditor of the

settlor can reach the trust's assets to satisfy its judgment").  Because Broaddus' current interests

in the Revocable Trust include both the income from the trust as well as all of the assets in the

trust, Shields may reach the entirety of the Revocable Trust's assets and income.  *See, e.g., Dexia*

*I*, 624 F. Supp.2d at 980 (a judgment creditor's ability to recover against the judgment debtor's self-settled trust is "limited to the maximum amount that the settlor-beneficiary could receive from the trust's income and corpus, e.g., just income if the settlor can only receive income, or *the entirety of the trust corpus if the settlor can receive the entire corpus*.") (emphasis added).

> ### C.   Even if Illinois Law Applies, Shields Is Entitled to Recover Broaddus' Interest in the Revocable Trust

The parties dispute whether Illinois law allows Shields to summarily recover the assets of the self-settled Revocable Trust or whether Shields must prove that Broaddus fraudulently transferred his assets into the Revocable Trust. Shields, relying on a district court opinion and subsequent Seventh Circuit opinion in *Dexia I*, 624 F. Supp. 2d at 976 and *Dexia v. Rogan*, 629 F.3d 612, 624 (7th Cir. 2010) ("*Dexia II*"), contends that Illinois law "does not recognize a self-settled trust established by a judgment debtor as an entity separate and apart from the judgment debtor himself for purposes of citation proceedings" and that "a judgment creditor may reach the assets of a self-settled trust in supplementary proceedings as if the assets were owned directly by the judgment debtor." (R. 323 at 2.)

Broaddus argues that the Illinois Appellate Court's recent decision in *Rush*, 956 N.E.2d 490, rejected that principle and that Illinois law requires a judgment creditor to prove that the judgment debtor fraudulently transferred the assets to the trust before the creditor may recover the trust's assets. (R. 321 at 2-3.) In *Rush*, the judgment creditor filed a complaint in a supplementary proceeding against the self-settled trust, alleging that the deceased judgment debtor fraudulently transferred his assets into the trust. 956 N.E.2d at 493, 497. The creditor alleged that such transfer was *per se* fraudulent under Illinois law. *Id.* at 493. The court held that Illinois common law, which provides that self-settled trusts are *per se* fraudulent, conflicts

13

with the IFTA, and therefore, a judgment creditor "must allege the elements contained in the [IFTA] to properly plead a fraudulent transfer claim." *Id*. at 496-97.

Shields attempts to distinguish *Rush* from this case on the grounds that the judgment debtor in *Rush* sought to hold the trust, established by the judgment debtor, liable for fraud by alleging that the transfer of assets to the self-settled trust was *per se* fraudulent, whereas here, Shields does not seek to impose liability on the Revocable Trust for fraud but rather seeks to establish Broaddus' ownership interest in the trust's assets. (R. 323 at 3.) In support of its argument, Shields relies on the Seventh Circuit's statements in *Dexia II*, in which it distinguished between using equitable common law theories to establish ownership of the trust assets rather than imposing liability on the trust for fraud. *See Dexia II*, 629 F.3d at 623. Shields also relies on 735 ILCS 5/2-1403, which provides that "[n]o court, except as otherwise provided in this Section, shall order the satisfaction of a judgment out of any property that is held in trust for the judgment debtor if such trust has, in good faith, been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor." According to Shields, the corollary of that rule is that a "court may order the satisfaction of a judgment out of funds held in a trust established by a judgment debtor." *See* R. 323 at 4; *see also Dexia I*, 624 F. Supp. 2d at 976 (stating that, pursuant to 735 ILCS 5/2-1403, "spendthrift trusts are valid except when they have been created or funded by a judgment debtor").

Although there is some merit to Shields' argument, the Court ultimately need not decide this issue because even if Shields must prove that Broaddus fraudulently transferred his assets to the Revocable Trust, Shields could easily do so. Pursuant to the IFTA, 740 ILCS 160/5(a), a transfer is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder,

delay or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1). In determining whether the debtor had "actual intent" to defraud, courts may consider a series of non-exclusive factors, including whether:

1)   the transfer or obligation was to an insider;

2)   the debtor retained possession or control of the property transferred after the transfer;

3)   the transfer or obligation was disclosed or concealed;

4)   before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5)   the transfer was of substantially all of the debtor's assets;

6)   the debtor absconded;

7)   the debtor removed or concealed assets;

8)   the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or in the amount of the obligation incurred;

9)   the debtor was insolvent or became solvent shortly after the transfer was made or the obligation was incurred;

10)  the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11)  the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b)(1)-(11).

Applying those factors here, it is clear that Broaddus fraudulently transferred his assets to the Revocable Trust. First, the transfer was to an insider–namely, a self-settled trust over which Broaddus has complete control and entitlement to all of the trust's income and assets. Second, Broaddus retained possession and control over the assets he transferred to the Revocable Trust,

as evidenced by the terms of the trust, which grant him authority to distribute the trust's income and assets as he wishes and allows him to receive all of the trust's income. *See* R. 315-9 at 2, 5. Third, before Broaddus transferred his assets to the Revocable Trust, the Court granted summary judgment against him, ordering that he was liable for Shields' attorney's fees. *See* R. 204 and R. 205 (dated September 1, 2010).[9]  As such, he transferred his assets while being fully aware that there was a judgment against him.  Fourth, there is ample evidence that Shields created the Revocable Trust and transferred his assets to that trust in order to conceal his assets.  The most telling evidence of this fraud is a series of emails from December 2010 in which Broaddus tells Wintrust that, "due to the Will partners [sic], LLC legal GP/LP position and related legal fees judgment," Wintrust needs to change the title on his accounts so that they are "not in the BAB [Bret A. Broaddus] entity."  (R. 320-9.)  He also reiterated his intent to conceal his assets by writing "we DO NOT WANT ANYTHING such as the BAB [Bret A. Broaddus] SS# associated with such BNR Trust - PERIOD!"  (*Id*.)  Such evidence clearly reflects Broaddus' nefarious intent to shield his assets.  Fifth, it appears that Broaddus received no consideration, let alone valuable consideration, in exchange for his transfer of assets to the Revocable Trust.  All of these facts necessitate a conclusion that Broaddus fraudulently transferred his assets to the Revocable Trust in order to hide them from Shields.  Therefore, under both Florida and Illinois law, Shields is entitled to recover the assets in and income from the Revocable Trust.

## II.  Shields May Recover the Funds Held in Stanley LLC's Name

Broaddus argues that the Court may order Lake Forest and Wintrust to turn over only "assets or income of the judgment debtor," *see* 740 ILCS 5/2-1402(c), and because the funds in

---

[9]  This fact is relevant to both 740 ILCS 160/5(b)(4) and (10).

the Lake Forest and Wintrust accounts are in the name of and belong to Stanley, LLC and not

Broaddus, Shields may not recover them.  Shields does not dispute the general contention that

the Court may only order the turn over of "assets or income of the judgment debtor," but

contends that because Broaddus, through the Revocable Trust, owns 99% of Stanley and is its

managing member, the Court should order turn over of Stanley's assets in Wintrust's and Lake

Forest's possession.  (R. 323 at 5.)  Shields points out that he has issued a Citation for Discovery

of Assets to Stanley LLC, and argues that "it makes little sense to request that Stanley be

compelled to turn the funds over to Shields, particularly where Broaddus controls Stanley and

has demonstrated a willful disregard of his obligation to satisfy the Judgment."  (*Id.* at 6.)

Neither party cites any case law in support of his argument.

　　　　Based on the undisputed facts in the record, Shields is entitled to recover the assets held

in Stanley's name.  *See Kennedy v. Four Boys Labor Serv., Inc*., 279 Ill. App.3d 361, 367, 664

N.E.2d 1088, 216 Ill. Dec. 160 (2d Dist. 1996) (noting that the provisions of § 2-1402 are to be

"liberally construed, and the statute gives courts broad powers to compel the application of

discovered assets or income to satisfy a judgment."); *Elmhurst Auto Parts, Inc. v. Fencl-Tufo*

*Chevrolet, Inc*., 235 Ill. App.3d 88, 94, 175 Ill. Dec. 771, 600 N.E.2d 1229 (2d Dist. 1992)

(noting that the supplemental proceedings statute permits the court to "determine the rights of

third parties").  Broaddus does not dispute that, at the time the Court entered final judgment

against him, the Wintrust Investment Account and the Lake Forest Checking Account were in his

name only.  Indeed, Broaddus did not even form Stanley until December 2010, well after the

Court granted summary judgment against him and ordered him to pay Shields' attorney's fees.

(R. 315-7; R. 315-9.)  The overwhelming evidence shows that Broaddus created Stanley, and

17

transferred his own assets into Stanley's name, in a vain attempt to hide his assets from Shields after the Court issued its judgment. *See, e.g.*, R. 320-9. To allow Broaddus to succeed in doing so would set the undesirable precedent that a judgment debtor may avoid paying its creditor by merely creating a shell corporation after judgment is entered and transferring its assets into the corporation's name. *Cf. Kennedy*, 279 Ill. App.3d at 367 (holding that "where a third party has transferred the assets of the corporate debtor for consideration, with full knowledge of the existence of an outstanding claim against the corporation, then the judgment creditor may properly treat the proceeds from the sale of the assets as property of the corporate debtor, noting that an opposite holding "would allow a third party to obtain assets of a judgment debtor and then sell those assets to another third party, thereby precluding recovery").

Broaddus, through the Revocable Trust, owns 99% of Stanley and is its managing member. His argument that he owns only a "membership interest" in Stanley, and not any of Stanley's assets or property, is unavailing. First, Broaddus fails to cite any authority to support why such a distinction is relevant to this issue. Second, it is undisputed that the approximate $1.45 million in the Wintrust Investment Account, which is currently in Stanley's name, belonged directly to Broaddus individually at the time the Court entered final judgment against Broaddus. He also does not dispute that he transferred those assets, which again were in his own name, into Stanley's name *after* the Court's judgment. Furthermore, Broaddus has not presented any evidence that Stanley paid anything of value to him in exchange for the transfer of the assets in the Wintrust Investment Account.[10]

---

[10] Although Broaddus' daughter owns the other 1% of Stanley, there is no evidence in the record that she gave anything of value to Broaddus or Stanley in consideration for her membership interest. Shields does not explicitly argue that Broaddus fraudulently transferred his

Moreover, the Court finds merit in Shields' argument that requiring it to recover Broaddus' assets directly from Stanley is procedurally unnecessary, especially in light of Broaddus' history of dishonesty and disregard for the Court's rulings during the initial and supplemental proceedings in this case. Requiring Shields to incur even more attorney's fees and spend more time and resources to recover that which this Court long ago deemed is his would frustrate the stated purpose of supplemental proceedings to be " swift, cheap, [and] informal." *See Resolution Trust*, 994 F.2d at 1225-27.

### III. Shields' Motion is Not Untimely

Broaddus also objects to Shields' motion on the ground that it is too late, citing to Illinois Supreme Court Rule 277, which provides that citation proceedings terminate automatically six months from the date of "(1) the respondent's first personal appearance pursuant to the citation or 2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner." *See* Ill.Sup.Ct.R. 277(f). Supreme Court Rule 277 further states that the court may "grant extensions beyond the 6 months, as justice may require." *Id.*

Shield's motion is not untimely. Lake Forest and Wintrust filed their answers on April 15, 2011, and Associated Bank filed its answer on March 14, 2011. (R. 289; R. 292; R. 293.) As Broaddus acknowledges, the Court granted several extensions of the relevant citations. Broaddus' argument that the last extension expired on November 8, 2011 fails because, at the status hearing on November 8, 2011, the Court granted another extension of those citations

---

assets into Stanley's name, and through such transfer, to his daughter's name, but the Court finds that such an argument would be successful for the same reasons articulated in the Court's fraudulent transfer analysis with respect to the Revocable Trust, *supra*.

through December 8, 2011 and ordered that Shields' file a written submission regarding "extending the time on the pending citations," which Shields did on November 15, 2011. *See* R. 312 and 313.[11]

Furthermore, even if the Court had not granted such an extension on November 8, 2011, Broaddus' argument would still fail. The language of Rule 277(f) makes clear that extensions may be granted "as justice may require." Ill.Sup.Ct.R. 277(f). As the Seventh Circuit has explained:

> Both state and federal courts construe Rule 277 liberally. We have not found examples of cases where a reviewing court found that a lower court's ruling was invalid as a result of Rule 277(f)'s operation. The text of the rule supports this interpretation. It says that despite the six-month limit, "[t]he court may ... grant extensions beyond the 6 months, as justice may require." Nothing in the rule requires a party to seek or request an extension from the court in order to avoid termination. Rather, the rule allows *the court* to "grant extensions ... as justice may require."

*Laborers' Pension Fund*, 542 F.3d at 194-95 (emphasis in original); *see also United States v. Macchione*, 660 F. Supp.2d 918, 922, n.2 (N.D. Ill. 2009) ("[T]he language of [Illinois Supreme Court Rule 277] does not require that the request for an extension be made prior to the expiration of the six-month period.") (citing *State Bank of India v. Commercial Steel Corp.*, No. 97 C 1150, 2001 WL 423001, at *3, n.7 (N.D. Ill. Apr. 24, 2001)). Rule 277(f)'s so-called "automatic termination deadline" seeks to "force judgment creditors to move promptly to collect their judgments, so that property does not remain encumbered by liens indefinitely and to avoid undue

---

[11] Although the minute order entry for November 8, 2011 does not explicitly state that the Court granted an extension of the citations in question, it is clear from the Court's statements in open court, as well as from the Court's directive to Shields to file a submission supporting the continuation of those citations, that the Court indeed granted the extension.

20

harassment of a judgment debtor or a third party." *Macchione*, 660 F. Supp.2d at 922 (citations and internal quotation marks omitted); *see also West Bend Mut. Ins. Co. v. Belmont State Corp*., No. 09 C 354, 2010 WL 5419061, at *5 (N.D. Ill. Dec. 23, 2010). Those concerns are not present here. Shields issued citations to Associated Bank, Wintrust, and Lake Forest to discover assets in order to assist him in collecting on a judgment that this Court entered on December 16, 2010. Shields has been in ongoing discussions with representatives from those entities and has learned that they are in possession of Broaddus' assets that may be used to satisfy part of the judgment against him. Broaddus has set forth no substantive argument that the pending citations have caused him or others harassment or undue prejudice.[12] Because the Court has extended the citations for good cause through the present time, Shields' motion is not untimely.

## IV.    Shields is Entitled to a Turnover Order

Based on all of the above considerations, the Court orders that

1.  Associated Bank turn over $1,500.41 from Broaddus' checking account to Shields by January 31, 2012;

2.  Lake Forest turn over $11,745.47 from Stanley checking account number *****587 to Shields by January 31, 2012; and

---

[12] Because the citation proceeding never terminated, Broaddus' reliance on *King v. Ionization Int'l, Inc*., 825 F.2d 1180, 1188 (7th Cir. 1987) is inapposite. In *King*, the Seventh Circuit held that where a judgment creditor's lien was created by a citation to discover assets, but lapsed at the end of the six-month period provided by Rule 277(f), a motion to extend the citation could not provide the creditor with a lien for the period between the lapse of the citation proceeding and the date of the motion, to the exclusion of other creditors. *Id*.; *see also State of India*, 2011 WL 423001 at *3. In contrast to *King*, the Court repeatedly extended the relevant citations, and the citation proceeding has not lapsed.

       3.     Wintrust turn over $147,318.00 from the Wintrust Investment Account (number ***1110) by January 31, 2012.

Further, the Court orders that the liens associated with the Citations served on Broaddus, BNR Revocable Trust, Stanley, LLC, Associated Bank, SMB Equity, LLC, Bradley Associates LLP, Wintrust, and Lake Forest remain in full force and effect. Those Citation Respondents are ordered to refrain from making any transfer or disposition of, or interfering with, any property not exempt from execution or garnishment belonging to Broaddus or to which he may be entitled or which may be acquired by or become due to him and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to Broaddus, until further order of the Court.

## CONCLUSION

For the reasons explained above, the Court grants Shields' motion.

Dated: January 5, 2012

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**

22